IN THE UNITED STATES DISTRICT

COURT FOR THE DISTRICT OF OREGON

EUGENE DIVISION

TARA C.,[1]

        Plaintiff,

v.

COMMISSIONER SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Case No. 6:19-cv-00147-YY

OPINION AND ORDER

YOU, Magistrate Judge:

Plaintiff Tara C. seeks judicial review of the final decision by the Commissioner of Social Security ("Commissioner") denying her application for Supplemental Security Income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381-1383f. This court has jurisdiction to review the Commissioner's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(g)(3). For the reasons set forth below, the Commissioner's decision is REVERSED and this case REMANDED for further proceedings.

---

[1] In the interest of privacy, the court uses only plaintiff's first name and the first initial of her last name.

1 – OPINION AND ORDER

## PROCEDURAL HISTORY

Plaintiff filed an application for SSI on July 20, 2015, alleging a disability onset date of October 8, 2008. Tr. 13, 59, 73. The Commissioner denied plaintiff's application for benefits initially and on reconsideration. *Id.* Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"), which took place on December 7, 2017. Tr. 26-46. After receiving testimony from plaintiff and a vocational expert ("VE"), ALJ Katherine Weatherly issued a March 21, 2018 decision finding plaintiff not disabled within the meaning of the Act. Tr. 13-21. The Appeals Council denied plaintiff's request for review on December 4, 2018, making the ALJ's decision the final decision of the Commissioner, subject to review by this Court. Tr. 1-3; 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on proper legal standards and the findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007). This court must weigh the evidence that supports and detracts from the ALJ's conclusion and "'may not affirm simply by isolating a specific quantum of supporting evidence.'" *Garrison v. Colvin*, 759 F.3d 995, 1009-10 (9th Cir. 2014) (quoting *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007)). This court may not substitute its judgment for that of the Commissioner when the evidence can reasonably support either affirming or reversing the decision. *Parra v. Astrue*, 481 F.3d 742, 746 (9th Cir. 2007). Instead, where the evidence is susceptible to more than one rational interpretation, the Commissioner's decision must be upheld if it is "supported by inferences reasonably drawn from the record." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citation omitted); see also *Lingenfelter*, 504 F.3d at 1035.

**SEQUENTIAL ANALYSIS**

Disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The ALJ engages in a five-step sequential inquiry to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520, 416.920; *Lounsbury v. Barnhart*, 468 F.3d 1111, 1114 (9th Cir. 2006) (discussing *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999)).

At step one, the ALJ found plaintiff had not engaged in substantial gainful activity since the application date, July 20, 2015. Tr. 15. At step two, the ALJ determined plaintiff suffered from the following severe impairments: attention deficit hyperactivity disorder ("ADHD"), post-traumatic stress disorder ("PTSD"), dyslexia, and depressive disorder. *Id.*

At step three, the ALJ found plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 16. The ALJ next assessed plaintiff's residual functional capacity ("RFC") and determined she could "perform a full range of work at all exertional levels but with the following nonexertional limitations: [plaintiff] is able to understand, remember, and carry out simple, routine, and repetitive tasks with no more than occasional public contact." Tr. 17.

At step four, the ALJ found plaintiff was unable to perform her past relevant work. Tr. 20.

At step five, the ALJ found that considering plaintiff's age, education, work experience, and RFC, she could perform jobs that existed in significant numbers in the national economy including industrial cleaner, machine operator, and wall cleaner. Tr. 21. Thus, the

ALJ concluded plaintiff was not disabled at any time from the application date, July 15, 2015, through the date of the written decision, March 21, 2018. *Id.*

## DISCUSSION

Plaintiff contends the ALJ erroneously failed to include two mental limitations in the RFC: (1) a limitation to one- and two-step tasks, and (2) a limitation in the ability to perform math-related tasks, which led to further error at step five.

### I.  Medical Opinion Evidence

#### A.  Relevant Law

The ALJ is responsible for resolving conflicts in the medical record, including conflicting physicians' opinions. *Carmickle v. Commissioner*, 533 F.3d 1155, 1164 (9th Cir. 2008). The law distinguishes between the opinions of three types of physicians: treating physicians, examining physicians, and non-examining physicians. *See* 20 C.F.R. § 404.1527.[2] The opinions of treating physicians are generally accorded greater weight than the opinions of non-treating physicians. 20 C.F.R. § 404.1527(c)(2); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). A treating physician's opinion that is not contradicted by the opinion of another physician can be rejected only for "clear and convincing" reasons. *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991). If, however, a treating physician's opinion is contradicted by the opinion of another physician, the ALJ must provide "specific, legitimate reasons" for discrediting the treating physician's opinion. *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983). Specific, legitimate reasons for rejecting a physician's opinion may include its reliance on a claimant's discredited subjective complaints, inconsistency with the medical records, inconsistency with a claimant's

---

[2] The Commissioner has issued revised regulations changing this standard for claims filed after March 27, 2017. *See* 20 C.F.R. § 404.1520c. Plaintiff's claim was filed before March 27, 2017, and therefore is controlled by 20 C.F.R. § 404.1527.

4 – OPINION AND ORDER

testimony, or inconsistency with a claimant's activities of daily living. *Tommasetti*, 533 F.3d at 1040.

B.     **Relevant Findings**

The medical opinions of the reviewing state-agency psychological consultants, Drs. Kessler and Hennings, encompass the issues in this matter. Dr. Kessler opined on October 30, 2015, that plaintiff was "moderately limited" in the ability to understand and remember instructions, and provided the following narrative assessment: "Cl[aimant] can understand/remember short 1-2 step instructions but is incapable of understanding/ remember[ing] more complex instructions [due to symptoms] of her [mental health] impairments." Tr. 55. He also opined that plaintiff was "moderately limited" in the ability to carry out instructions and to maintain attention and concentration for extended periods. *Id.* Accordingly, he provided the following narrative: "Cl[aimant] can maintain/carry out simple 1-2 step tasks but is incapable of maintaining/carrying out more complex tasks [due to symptoms] of her [mental health] impairments." *Id.*

Dr. Hennings, reviewing the record on reconsideration, opined on February 22, 2016, that plaintiff was "moderately limited" in understanding and remembering detailed instructions, and provided the following narrative: "Cl[aimant] can understand/remember short and simple instructions but is incapable of understanding/remembering more complex instructions [due to symptoms] of her [mental health] impairments. Tr. 68. He further determined plaintiff was "moderately limited" in carrying out detailed instructions and maintaining attention and concentration for extended periods. *Id.* Dr. Hennings therefore opined that "Cl[aimant] can maintain/carry out simple routine tasks but is incapable of maintaining/carrying out more

complex tasks [due to symptoms] of her [mental health] impairments. Her symptoms may improve with consistent use of medication." Tr. 69.

The ALJ purported to accord the doctors' opinions "significant weight," explaining that the doctors "opined that claimant would be capable of understanding, remembering, and carrying out one- to two-step instructions and tasks[.]" Tr. 19.

## II.  Discussion

### A.  One- to Two-Step Tasks Analysis

In Social Security disability law, the RFC reflects the most a person can do, despite her impairments. 20 C.F.R. § 416.945. In fashioning an RFC, an ALJ is required to include the limiting effects of all of a claimant's impairments, both those deemed "severe" at step two of the sequential evaluation process, and those that are not deemed "severe." *Id.*; *see* Social Security Ruling ("SSR") 96-8p, *available at* 1996 WL 374184 (July 2, 1996). Only those limitations that are supported by substantial evidence, however, must be incorporated into the RFC. *Osenbrock v. Apfel*, 240 F.3d 1157, 1163-65 (9th Cir. 2001). In crafting the RFC, the ALJ is responsible for resolving conflicts and ambiguities in the medical record, including conflicting physicians' opinions. *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1174 (9th Cir. 2008). To reject a reviewing physician's opinion that is contradicted by other medical opinions, and thus omit certain opined functional limitations, an ALJ must provide "specific and legitimate" reasons for doing so. *See Tommasetti*, 533 F.3d at 1040.

Plaintiff argues that the ALJ erred by failing to properly encapsulate in the RFC the functional limitations set forth by Dr. Kessler—specifically, the limitation to understanding and carrying out simple one- to two-step instructions and tasks. Because the relevant RFC limitation provided by the ALJ—the ability to understand, remember, and carry out simple, routine, and

repetitive tasks—does not precisely track Dr. Kessler's opinion, plaintiff argues that the RFC did not properly limit plaintiff to one- to two-step instructions and tasks. Defendant maintains that the ALJ did not err in formulating the RFC because Dr. Kessler's opinion was properly translated by Dr. Hennings into a concrete functional limitation to simple, routine, and repetitive tasks. Further, defendant argues that "[a]n ALJ may reasonably interpret a limitation to 'simple repetitive 1-2 step tasks' as a limitation to 'simple, routine, repetitive tasks' if the evidence supports such a limitation." Def.'s Br. at 4 (citing *Carranza-Villabos v. Berryhill*, No. 3:17-cv-2273, 2018 WL 3490800, at *3 (S.D. Cal. July 18, 2018), *report and recommendation adopted*, 2018 WL 6601087 (S.D. Cal. December 17, 2018)).

Defendant's argument is unavailing. Although *Carranza-Villabos* held that a limitation to one- to two-step tasks was consistent with "simple, routine, repetitive tasks" where the state-agency physicians opined that the claimant was not significantly limited in his ability to carry out detailed instructions, the result is an outlier in the Ninth Circuit.[3] Generally, district courts in the Ninth Circuit, and particularly in the District of Oregon, have drawn a clear distinction between the limitation to one- to two-step tasks and the limitation to simple, routine, repetitive tasks. *See, e.g.*, *Whitlock v. Astrue*, No. 3:10-cv-357-AC, 2011 WL 3793347, at *4-5 (D. Or. June 21, 2011), *findings and recommendation adopted in relevant part*, 2011 WL 3793347 (D. Or. Aug. 24, 2011); *Chase v. Colvin*, No. 6:12-cv-01857-HZ, 2013 WL 5567082, at *4-5 (D. Or. Oct. 9, 2013); *Trujillo v. Colvin*, No. 3:13-cv-0620-SI, 2014 WL 2213218, at *3-5 (D. Or. May 27, 2014); *Oxford v. Berryhill*, No. 1:16-cv-01763-JE, 2017 WL 7513227, at *10-12 (D. Or. Dec. 12, 2017), *findings and recommendation adopted*, 2018 WL 785865 (D. Or. Feb. 7, 2018).

---

[3] Moreover, the facts of *Carranza-Villabos* are distinguishable because here, both state-agency doctors opined that plaintiff *was* significantly limited in her ability to carry out detailed instructions. *See* Tr. 55, 68-69.

7 – OPINION AND ORDER

The rationale behind the distinction is that the Dictionary of Occupational Titles ("DOT") differentiates jobs requiring GED reasoning levels that coincide with the functional limitations at issue here. The Ninth Circuit, in *Rounds v. Berryhill*, explained that there are six such reasoning levels, from the simplest (GED Reasoning Level One) to the most complex (GED Reasoning Level Six).[4] 807 F.3d 996, 1002-03 (9th Cir. 2015). The *Rounds* court held that "tasks with more than one or two steps would require detailed instructions," consistent with GED Reasoning Level Two jobs, whereas GED Reasoning Level One jobs would require only that a plaintiff "apply commonsense understanding to carry out simple one- or two-step instructions." *Id.* at 1003 (internal quotation marks omitted). Thus, the circuit court determined that there was an "obvious similarity" between a limitation to one- to two-step tasks or instructions and GED Reasoning Level One. *Id.*

As such, and contrary to defendant's contention, there is an established distinction between Dr. Kessler's opinion, which limited plaintiff to one- to two-step instructions, and Dr. Hennings', which limited plaintiff to simple, routine, repetitive tasks. As one of the aforementioned cases stated, a functional limitation to "1-2 step tasks is materially more restrictive than a limitation to simple tasks" or simple instructions. *Oxford*, 2017 WL 7513227, at *11 (citations and internal quotation marks omitted). *See also Israel v. Astrue*, 494 F. App'x 794 (9th Cir. 2012) (cited pursuant to Ninth Circuit Rule 36-3); *Sabin v. Astrue*, 337 F. App'x 617 (9th Cir. 2009) (cited pursuant to Ninth Circuit Rule 36-3).

Accordingly, to the extent the ALJ failed to include the more restrictive limitation to one- to two-step tasks in the RFC despite adopting it, the ALJ erred. *See Stubbs-Danielson v. Astrue*,

---

[4] *See* DOT, App. C (4th Ed., rev. 1991), *available at* 1991 WL 688702.

8 – OPINION AND ORDER

539 F.3d 1169, 1174 (9th Cir. 2008) (an RFC is deficient where it fails to include all of the functional restrictions the ALJ expressly adopts).

B.   **Harmless Error Analysis**

Defendant further argues that even if the ALJ erred by failing to include Dr. Kessler's limitation to one- to two-step instructions and tasks in the RFC, the error was harmless. Indeed, in the Ninth Circuit, "an ALJ's error is harmless where it is inconsequential to the ultimate nondisability determination." *Molina v. Astrue*, 674 F.3d 1104, 1115 (9th Cir. 2012) (citation and internal quotation marks omitted). Specifically, defendant maintains that because one of the jobs identified at step five of the sequential evaluation—wall cleaner[5]—requires no more than GED Reasoning Level One based on the DOT, plaintiff could perform it despite being limited to one- to two-steps instructions or tasks.

Plaintiff argues that relying on the DOT, rather than testimony from a VE, precludes this court from affirming the ALJ's decision because such reasoning would be *post hoc*. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225-26 (9th Cir. 2009) (reviewing courts may not affirm a nondisability decision on reasoning or factual findings not invoked in the ALJ's decision) (citing *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947)). Accordingly, plaintiff argues, the error cannot be "cured" because either the ALJ did not include in her decision that plaintiff could perform any GED Reasoning Level One job, or because the ALJ did not ask the

---

[5] DOT 381.687-026, *available at* 1991 WL 673260. "Cleans interior walls and ceilings of offices, apartments, and other buildings, by hand or by use of a wall-washing machines: Cleans walls and ceilings by hand, using sponge and soapy water or chemical solution, or presses level in nozzle of machine to control flow of solution and moves nozzle fitted with porous pad over surfaces, exerting sufficient pressure to remove dirt and grease. May estimate cost of cleaning walls and submit bids." *Id.*

9 – OPINION AND ORDER

VE if the "wall cleaner" job identified at step five could be performed by an individual limited to one- to two-step instructions or tasks.

Plaintiff's argument is unavailing, however. As the Ninth Circuit explained in *Bray*, the rationale undergirding the prohibition on *post hoc* reasoning is that courts should not "attempt to intuit what the adjudicator may have been thinking" by manufacturing evidentiary support for a nondisability decision. *Bray*, 554 F.3d at 1225. Such is not the situation here, however: the ALJ expressly identified one job that plaintiff could perform, consistent with a limitation to one- to two-step instructions based on the definition available in the DOT. Although the ALJ neglected to include the one- to two-step limitation in the RFC, the wall cleaner job identified by the ALJ is nonetheless consistent with the RFC plaintiff alleges. In other words, there is no "manufacturing" of evidentiary support, nor any attempt to intuit the ALJ's thinking; rather, the ALJ identified a job compatible with the more limited RFC plaintiff asks this court to adopt. Having identified a job compatible with the narrower RFC, remand would serve no useful purpose barring further error, as an ALJ on remand would simply determine that plaintiff could perform the wall cleaner job even if the RFC were revised to include the one- to two-step instructions and tasks limitation, and once again find plaintiff not disabled. That the ALJ erred in omitting the limitation is, therefore, inconsequential to the ultimate nondisability decision. The error was harmless. *Bray*, 554 F.3d at 1225.

### C. Limitation Regarding Math Skills

Plaintiff further alleges that the ALJ failed to include in the RFC a provision regarding plaintiff's limitations in math skills, which plaintiff argues Dr. Smolen assessed. Although the ALJ accorded Dr. Smolen's medical opinion "some weight," plaintiff's argument fails because the doctor did not assess any functional limitations regarding math skills. Tr. 19. Indeed, the

only limitation Dr. Smolen attested to was "mild impairment" in the ability to concentrate and attend to her work. Tr. 228. Plaintiff's assertion is not supported by substantial evidence, and thus the ALJ did not err in omitting any limitation regarding math skills.

      D.      **Number of Jobs in the National Economy**

Finally, plaintiff argues that the ALJ failed to carry the burden of proof at step five of identifying other work in the national economy that a claimant with plaintiff's RFC could perform. When an ALJ finds a claimant not disabled at step five, the ALJ must present "evidence that demonstrates that other work exists in significant numbers in the national economy that the claimant can do." 20 C.F.R. § 416.960(c)(2). The regulations state that the agency "consider[s] that work exists in the national economy when it exists in significant numbers either in the region where [the claimant] live[s] or in several other regions of the country." 20 C.F.R. § 416.966(a). Additionally, the regulations provide that "[i]solated jobs that exist only in very limited numbers in relatively few locations outside of the region where [a claimant] live[s]" are not significant in the national economy. 20 C.F.R. § 416.996(b).

Although two of the jobs identified by the ALJ were incompatible with plaintiff's RFC, the ALJ's identification of the wall cleaner job properly coincided with plaintiff's limitation to one- to two-step instructions and tasks, as it falls in category of the GED Reasoning Level One. *See supra.* In response to questioning by the ALJ, the VE testified that 21,002 wall cleaner jobs existed in the national economy. Tr. 43. Thus, to the extent 21,002 jobs constitutes a "significant number," the ALJ's ultimate nondisability decision would be valid.

On this record, it is unclear whether 21,002 jobs is "significant" within the meaning of the Act. In *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519 (9th Cir. 2014), the Ninth Circuit reiterated that it has "never set out a 'bright-line rule' for what constitutes a significant number

of jobs." *Id.* at 528; *see also Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012) (same). There, the court held that 25,000 jobs in the national economy represented a significant number, but indicated that the number presented "a close call." *Id.* at 529; *compare Lemauga v. Berryhill*, 686 F. App'x 420, 422 (9th Cir. 2017) (noting that the court has never found 12,600 was significant) (cited pursuant to Ninth Circuit Rule 36-3).

Since *Gutierrez*, district courts in the Ninth Circuit have reached various conclusions about what constitutes a "significant number" for jobs in the national economy. In this district, Judge Acosta has found that 17,046 laundry folder jobs was a significant number: "[T]he job of laundry folder is unlikely to be isolated in 'relatively few locations,' as commercial laundries frequently serve hospitals, schools, hotels, and motels, which are spread throughout the country, and these entities often have in-house laundry services as well." *Julie H. v. Comm'r, Soc. Sec. Admin.*, No. 6:17-cv-1490-AC, 2018 WL 7254706, at *5 (D. Or. Nov. 14, 2018), *findings and recommendation adopted*, 2019 WL 260852 (D. Or. Jan. 18, 2019). Judge McShane found that reasoning persuasive in *Stephanie O. v. Berryhill*, and held that 17,408 table worker and hand mounter positions was significant. No. 3:18-cv-0113-MC, 2019 WL 2713234, at *7 (D. Or. June 28, 2019). Yet in *Moey C. v. Comm'r, Soc. Sec. Admin.*, Judge Hernández held that "14,670 jobs in the national economy—only slightly more than one-half of 25,000—does not constitute a significant number of jobs." No. 3:18-CV-01409-HZ, 2020 WL 39965, at *3 (D. Or. Jan. 3, 2020); *see also Lisa L. v. Comm'r of Soc. Sec.*, No. 3:17-CV-01874-AA, 2018 WL 6334996, at *4 (D. Or. Dec. 5, 2018) (holding that "11,084 jobs does not meet the significant number standard"); *Watkins v. Comm'r Soc. Sec. Admin.*, No. 6:15-cv-01539-MA, 2016 WL 4445467, at

\*7 (D. Or. Aug. 22, 2016) (finding that "11,000 order caller jobs in the national economy does not represent a significant number").[6]

Notably, many of the cases that have found significant national job numbers below the 25,000 figure cited in *Gutierrez* "have done so when considered in conjunction with *regional* numbers." *Sovan v. Berryhill*, No. C17-5238-MT, 2017 WL 4216493, at \*4 (W.D. Wash. Sept. 22, 2017) (emphasis added) (string citation omitted). "The number of 'national jobs' cannot be viewed 'as a stand-alone figure,' but instead must be considered in light of the fact that the number 'represents jobs across 'several regions.'"" *Tammy L. F. v. Berryhill*, No. 318CV05090RBLTLF, 2019 WL 286056, at \*2 (W.D. Wash. Jan. 3, 2019), *report and recommendation adopted sub nom.*, *Foster v. Berryhill*, 2019 WL 280069 (W.D. Wash. Jan. 22, 2019) (quoting *Beltran*, 700 F.3d at 390). The ALJ or vocational expert must specify "the size of the region in which the . . . available jobs exist. Without knowing the geographic size of the region . . . , [the court] cannot meaningfully compare this case to others to assess whether [the] available jobs is significant." *Lemauga*, 686 F. App'x at 422 (remanding for further proceedings "to define the region and evaluate whether the vocational expert's regional job number is significant"). "Further, an ALJ errs in finding a significant number of national jobs exist, where those jobs are 'very rare' or are 'generally unavailable' to the claimant due to his or her limitations." *Tammy L. F.*, 2019 WL 286056, at \*2 (quoting *Beltran*, 700 F.3d at 389; *Gutierrez*,

---

[6] Other district courts in the Ninth Circuit have reached more varying results. *Compare Mize v. Saul*, No. 2:18-CV-03202-AC, 2020 WL 528850, at \*5 (E.D. Cal. Feb. 3, 2020) (8,233 insignificant), *with Evans v. Colvin*, No. ED CV 13–01500 RZ, 2014 WL 3845046, at \*2-\*3 (C.D. Cal. Aug. 4, 2014) (6,200 significant); *compare Montalbo v. Colvin*, 231 F. Supp. 3d 846, 863 (D. Haw. 2017) (12,300 insignificant), *with Aguilar v. Colvin*, No. 5:15-cv-02081-GJS, 2016 WL 3660296, \*3 (C.D. Cal. July 8, 2016) (11,850 significant); *see also Sellimovic v. Colvin*, No. CIV 13–1248–PHX–MHB, 2014 WL 4662251, at \*10 (D. Ariz. Sept. 18, 2014) (13,110 insignificant); *Valencia v. Astrue*, No. C 11–06223 LB, 2013 WL 1209353, at \*18 (N.D. Cal. Mar. 25, 2013) (14,082 insignificant).

13 – OPINION AND ORDER

740 F.3d at 529 (isolated jobs existing in only very limited numbers in relatively few locations outside of the region where the claimant lives are not a significant number)).

Here, the ALJ did not solicit testimony from the VE regarding the number of regional wall cleaner jobs, nor did the ALJ ask the vocational expert whether the 21,002 wall cleaner jobs were spread across "several regions of the country."[7] *Tammy L. F.*, 2019 WL 286056, at *4. Without additional information, the court is unable to determine whether 21,002 jobs is significant. Therefore, this case is remanded for the ALJ to determine how many regional wall cleaner jobs exist, how the region is defined, whether the jobs are spread across several regions of the country, and whether, in light of that information, the number of wall cleaner jobs is significant. *See Lemauga*, 686 F. App'x at 422 (remanding for further proceedings to define the region and evaluate whether the vocational expert's regional job number is significant); *Sovan*, 2017 WL 4216493, at *5 (remanding for determination regarding number of regional jobs).

## CONCLUSION

The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED February 24, 2020.

/s/ Youlee Yim You
Youlee Yim You
United States Magistrate Judge

---

[7] Also, interestingly, in a recent case, *Figueroa v. Saul*, the ALJ determined that the number of national wall cleaner jobs was substantially less—only 16,000. No. CV 18-0885 JHR, 2019 WL 3766184, at *3 (D.N.M. Aug. 9, 2019). In *Figueroa*, the ALJ relied on the testimony of a vocational expert at a hearing held on October 6, 2017. 2019 WL 3766184, at *2. The hearing in plaintiff's case was held just three months later, on December 17, 2017. Tr. 26.

14 – OPINION AND ORDER